UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT TAYLOR, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:18-cv-01991-JRS-MJD ) |
| KEITH BUTTS, | ) ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

Following a bench trial in Marion County, Indiana, petitioner Robert Taylor was convicted of one count of rape and sentenced to a 17-year prison term. Mr. Taylor now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that (1) the master commissioner who presided over his trial did so without subject-matter jurisdiction, thereby violating Mr. Taylor's right to due process, (2) the prosecutor committed misconduct by introducing DNA evidence recovered from the victim's pantiliner, (3) the prosecutor committed misconduct by eliciting the victim's identification of Mr. Taylor, and (4) post-conviction counsel was ineffective. These claims do not warrant habeas relief, so Mr. Taylor's petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I. Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

On June 27, 2009, S.S. was homeless and living in a shelter on 10th Street near downtown Indianapolis. Late that Saturday morning, she was walking down 10th Street toward Pennsylvania Avenue to a location where she could have a free lunch in a park. While walking past a construction zone, a man pulled his car up by the curb and asked if she needed a ride. S.S. declined. Shortly thereafter, the man grabbed her from behind and dragged her up a hill where he threw her on the ground, pulled off her shorts and underwear, and raped her. After ejaculating inside her, the man then went back down the hill and drove away.

Distraught and unable to call 911, S.S. dressed and then walked to the park for lunch. Several hours later, S.S. encountered a good friend and told her about the rape. The friend helped her call police. S.S. described her attacker as a black male in his twenties or thirties, about five feet and ten inches tall, with short hair and a thin build. Detective David Everman took S.S. to Methodist Hospital to be examined by a sexual assault nurse examiner (SANE). SANE Robin Brannan collected swabs from S.S., as well as the underwear S.S. wore after the attack. A panty liner was attached to the underwear. Brannan apparently did not notice the panty liner, as it was not separated from the underwear or documented. The underwear with the panty liner were bagged together, sealed, and included in the rape kit. Thereafter, the rape kit, which was stored in a locked refrigerator, was collected by the Marion County Crime Lab and securely stored at the lab.

Shannin Guy, a forensic scientist with the Marion County Forensic Services Agency, conducted serology and DNA analysis on the material collected in the rape kit. Guy identified the presence of seminal material on the vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner. She then performed DNA analysis on a portion of the seminal material collected from each of these four items. Analysis revealed that the male DNA profiles from each item matched, identifying the same unknown male individual. Guy submitted the profile from the seminal material found on the panty liner to CODIS, which resulted in a match to Taylor in August 2010. After obtaining a buccal swab from Taylor, Guy performed further DNA analysis, directly matching his DNA to the seminal material found on the vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner.

Detective Everman met with S.S. on October 15, 2010 and presented her with a photo array. S.S. was unable to identify her attacker. The detective then directed her to Taylor's picture and indicated that there had been a DNA match.

On November 18, 2010, the State charged Taylor with class B felony rape and class D felony criminal confinement. Taylor unsuccessfully sought to suppress the DNA results. Following a bench trial on December 7, 2011, Taylor was found guilty as charged. A judgment of conviction, however, was entered only on the rape charge, and the trial court imposed an executed sentence of seventeen years.

*Taylor v. State*, 2012 WL 4077898, at *1–2 (Ind. Ct. App. Sept. 18, 2012).

On direct appeal, Mr. Taylor argued, as relevant here, that the victim's identification of Mr. Taylor and the DNA evidence recovered from the victim's pantiliner were improperly admitted. Dkt. 12-3 at 4–9. The appellate court affirmed. *Taylor*, 2012 WL 4077898. Mr. Taylor did not petition to transfer to the Indiana Supreme Court.

Mr. Taylor next filed a post-conviction petition in the state trial court. *Taylor v. State*, 2018 WL 388072, at *2 (Ind. Ct. App. Jan. 12, 2018). His counsel withdrew from representation, and Mr. Taylor withdrew his petition without prejudice. *Id.* Mr. Taylor then filed another petition, which the trial court denied after a hearing. *Id*. On post-conviction appeal, Mr. Taylor argued that (1) the master commissioner who presided over his trial lacked jurisdiction to do so, (2) the prosecutor committed misconduct by introducing DNA evidence recovered from the victim's pantiliner, (3) the prosecutor committed misconduct by eliciting the victim's confession, and (4) post-conviction counsel was ineffective for withdrawing representation and failing to argue ineffective assistance of direct appeal counsel. Dkt. 12-9 at 8–20. The appellate court affirmed, *Taylor*, 2018 WL 388072, and the Indiana Supreme Court denied transfer, dkt. 12-8 at 10.

Mr. Taylor filed a petition for a writ of habeas corpus on June 28, 2018, raising the same claims raised in his post-conviction appeal. Dkt. 1 at 5–10. Respondent concedes the petition is timely, dkt. 15, but he asserts that claims 1, 2, and 3 are procedurally defaulted, dkt. 12 at 9–11.

## II. Legal Standards

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). If the last reasoned state court decision did not adjudicate the merits of a claim, or if the adjudication was unreasonable under § 2254(d), federal habeas review of that claim is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766−68 (7th Cir. 2015).

### III. Discussion

**Ground 1: The master commissioner's authority to preside at trial**

Any claim decided by the state court on "independent and adequate" state grounds is procedurally defaulted. *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)).

Mr. Taylor alleges that he was denied due process because a master commissioner, not an elected judge, presided over his trial. Under Indiana law, a party "may request that an elected judge of the superior court preside over the proceeding instead of the magistrate [or master commissioner] to whom the proceeding has been assigned." Ind. Code 33-33-49-32(c); *see also Capehart v. Capehart*, 771 N.E.2d 657, 662 (Ind. Ct. App. 2002) (applying the statute to master

commissioners as well as magistrates). In a criminal case, the request must be made in writing "not later than ten (10) days after the omnibus date." Ind. Code 33-33-49-32(c)(2).

Here, Mr. Taylor's (untimely) request for a superior court judge was first granted but then denied. *Taylor*, 2018 WL 388072, at *3. Mr. Taylor alleged on post-conviction review that this was error, but the post-conviction appellate court held that Mr. Taylor had waived the issue by failing to present it on direct appeal. *Id.* Appellate waiver is an independent state law ground for resolving the claim. *See Richardson v. Lemke*, 745 F.3d 258, 270–71 (7th Cir. 2014).

It is also an adequate state law ground. To be adequate in this context, the state law "must have been firmly established and regularly followed" when the default occurred. *Richardson*, 745 F.3d at 271. Mr. Taylor does not dispute that Indiana courts regularly apply appellate waiver in ordinary circumstances. Instead, he suggests that waiver should not have applied here because the master commissioner did not have jurisdiction to preside over the trial. Dkt. 13 at 9. But Indiana law on this point is clear: "the authority of the officer appointed to try a case [does not affect] the jurisdiction of the court." *Floyd v. State*, 650 N.E.2d 28, 32 (Ind. 1994) (enforcing waiver of claim that improperly appointed judge lacked "jurisdiction" to enter final judgment).

Accordingly, this claim is procedurally defaulted. A petitioner may overcome a procedural default by showing (1) cause to excuse the default and (2) actual prejudice resulting from the alleged constitutional violation. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017).

In a supplemental memorandum, Mr. Taylor argues that appellate counsel was ineffective for failing to raise the issue on direct appeal, thereby excusing the default. Dkt. 24. But "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Accordingly, a petitioner seeking to use appellate counsel's ineffectiveness to excuse a procedural

5

default must first present that claim through one complete round of state court review. *See Promotor v. Pollard*, 628 F.3d 878, 887, 889 (7th Cir. 2010). Mr. Taylor did not present his ineffective assistance of appellate counsel claim in state court, so that claim is defaulted. He argues that post-conviction counsel was ineffective for failing to argue direct appeal counsel's ineffectiveness. Dkt. 1 at 10. But ineffective assistance of post-conviction counsel cannot be used as cause to excuse the default of a claim that appellate counsel was ineffective. *Davila*, 137 S. Ct. at 2065. Mr. Taylor thus cannot excuse the default of his underlying due process claim regarding the master commissioner, so this claim is denied.

**Ground 2: Prosecutorial misconduct regarding DNA evidence**[1]

Mr. Taylor alleges that the prosecutor violated Mr. Taylor's right to due process by introducing DNA evidence recovered from the victim's pantiliner. Dkt. 1 at 7. But the Indiana Court of Appeals on direct appeal held that the DNA evidence was properly admitted. *Taylor*, 2012 WL 4077898, at *3. Admissibility is a question of state law, and on federal collateral review, this Court may not disturb a state court's resolution of a state law question. *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). A prosecutor does not commit misconduct by introducing admissible evidence, so this claim is denied.

---

[1] Respondent asserts that Claims 2 and 3 were defaulted on post-conviction review, but Mr. Taylor presented similar claims on direct appeal, creating a question of whether the post-conviction defaults preclude relief. The Court will bypass this default question and address the merits of these claims. *See Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018) ("Rather than work our way through the maze of these procedural arguments, however, we think it best to cut to the chase and deny [the] claim on the merits."); *id.* (explaining why bypassing a question of procedural default to deny a claim on the merits is "consistent with the interests of comity, finality, federalism, and judicial efficiency that are at the heart of both the exhaustion requirement and the procedural default doctrine"); *see also Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (concluding that it is appropriate to bypass a procedural default question and "proceed to adjudicate the merits" when it is "clear" the petition should be denied on the merits).

**Ground 3: Prosecutorial misconduct regarding victim identification**

"When the government obtains a conviction through the knowing use of false testimony, it violates a defendant's due process rights." *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Mr. Taylor alleges that the prosecutor violated Mr. Taylor's due process rights by eliciting the victim's identification of Mr. Taylor at trial despite knowing that the victim had "a serious case of doubt" regarding her identification of him. Dkt. 1 at 8–9. The Indiana Court of Appeals held that any error in eliciting the identification was harmless because the DNA evidence "conclusively identified" Mr. Taylor. *Taylor*, 2018 WL 388072, at *5.

To obtain habeas relief, Mr. Taylor must show that the state court's harmless error determination was unreasonable. *Davis, v. Ayala*, 135 S. Ct. 2187, 2198 (2015); *see also* 28 U.S.C. § 2254(d). He cannot do so. The master observer, the factfinder at Mr. Taylor's bench trial, did not rely on the victim's identification:

> Now this wasn't the greatest testimony I've heard with respect to [identification] . . . . If this case rested only on [identification] testimony of [the victim] then this is a much weaker case for the State. But it is more than that. This is a DNA case. And the DNA confirms conclusively and without hesitation that Robert Taylor is the source of the DNA evidence.

*Taylor*, 2012 WL 4077898, at *3. The appellate court therefore reasonably concluded that any error in admitting the identification was harmless.

Relatedly, Mr. Taylor must also show that the alleged constitutional error actually prejudiced him. *Davis*, 135 S. Ct. at 2197 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Under the "actual prejudice" standard, a reviewing court must deny relief unless there is "grave doubt about whether [the error] had substantial and injurious effect or influence" on the trial outcome. *Davis*, 135 S. Ct. at 2197–98 (quotation marks omitted). There is no such doubt here.

As the trial factfinder summarized, "This is a DNA case." The victim's identification was superfluous, and Mr. Taylor was not prejudiced by it. This claim is therefore denied.

**Ground 4: Ineffective assistance of post-conviction counsel**

Finally, Mr. Taylor alleges that post-conviction counsel was ineffective. Dkt. 1 at 10. But "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, this claim, too, is denied.

### IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted). Where a claim is resolved on procedural grounds (such as default), a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Here, no reasonable jurist could disagree that (1) Mr. Taylor's claim regarding the master commissioner's authority is procedurally defaulted, (2) his claim regarding the admission of DNA evidence hinges on an unreviewable state law determination, (3) he failed to show prejudice under *Brecht* for his claim regarding the victim's identification of him, and (4) he cannot obtain relief on a claim of ineffective assistance of post-conviction counsel. A certificate of appealability is therefore **denied**.

### V. Conclusion

Mr. Taylor's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue.

Final judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 7/22/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ROBERT TAYLOR
4221 Evanston
Indianapolis, IN 46205

Andrew A. Kobe
INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov